UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00111-JHM

JEREMY RAY WICKS                                                                    PLAINTIFF

V.

HOPKINS COUNTY                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Hopkins County's ("the County") Motion for Summary Judgment [DN 19]. Fully briefed, this matter is ripe for decision. For the following reasons, the County's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Jeremy Ray Wicks ("Wicks"), *pro se*, is a pretrial detainee in the Hopkins County Detention Center ("HCDC"). [DN 1 at 1]. The HCDC mail policy ("the Policy") provides in part:

> In order to provide a safe and secure facility, all mail except those from attorneys, the courts or other public officials, will be digitally scanned and uploaded into the inmate's account for viewing on cell kiosks[.]

[DN 19-2 at 4]. Kiosk access varies with inmate classification. Inmates in administrative segregation—like Wicks—may only access the kiosk during a one-hour period each day, which also serves as their "recreation, hygiene, and cleaning time." [*Id.* at 2]. Their kiosk is "located at eye level, up on the wall, out in the common area, with no table or any way to actually sit down . . . ." [DN 12 at 1]. Non-segregation inmates enjoy more access. According to Wicks, "[n]o other inmates in this facility are only allowed to view their mail during their recreation time.

1

They have 24 hour a day, 7 day a week access to the kiosk system." [DN 17 at 2]. Plus, for this population, each cell that houses multiple inmates has a kiosk. [DN 19-2 at 2].

Wicks complains the HCDC, and thereby the County, denies inmates their "right to send and receive mail" by scanning and uploading incoming mail into a kiosk system. [DN 1 at 4]. Since he receives "Bible studies," he alleges the HCDC has "infring[ed] on [his] freedom of religion." [*Id*. at 4]. He also asserts his "privacy is being violated" since the kiosk system allows other inmates to view his "personal letters[ ] and pictures."[1] [DN 25 at 2]. He does not allege the HCDC is reading or censoring his mail. Aside from seeking monetary damages, Wicks wants inmates to have "personal mail, and photographs, physically in our possession, [as] a form of motivation." [DN 23 at 1]. In the alternative, he recommends the facility provide each inmate "their own cell, kiosk, and privacy with no time restrictions or other people . . . ." [DN 1 at 5].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

---

[1] Federal courts grant special status to legal correspondence. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). In the present case, Wicks's Complaint only mentions "[p]ersonal, religious, and educational" materials—it does not reference any affected legal correspondence. [DN 1 at 5]. Thus, the Court does not address this issue.

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Construing Wicks's Complaint broadly, it alleges the Policy violates his First Amendment right to send and receive mail. Similarly, it alleges the violation of his right to free exercise of religion, which the Court analyzes under both the First Amendment and the Religious Land Use and Institutionalized Person Act ("RLIUPA"). The Court addresses each claim in turn.

#### A. First Amendment Claims

Wicks brings a § 1983 claim against the County for allegedly violating his constitutional right. "When a § 1983 claim is made against a municipality such as Hopkins County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation." *Marigny v. Hopkins Cnty. Jail Admin.*, 2021 WL 4554493, at *2 (W.D. Ky. Oct. 5, 2021) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)). Courts recognize that inmates have a First Amendment right to send and receive mail. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir.

3

2003). Similarly, "[i]nmates retain rights to free exercise of religion." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "When a prison regulation impinges on [these] constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts apply four factors to determine whether the regulation is "reasonably related to legitimate penological interests." *Id.* The Court applies these factors to the present case to determine whether the Policy unconstitutionally restricts either the First Amendment rights to receive mail or free exercise of religion.

The first factor requires a "'valid, rational connection' between the prison policy and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 416 U.S. 576, 586 (1984)). "Moreover, the governmental objective must be a legitimate and neutral one." *Id.* at 90. The Policy has a legitimate goal: safety. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). The Policy itself emphasizes the need "to provide a safe and secure facility." [DN 19-2 at 4]. The county jailer, Mike Lewis, states the facility "adopted the policy of using kiosks . . . to reduce the incidence of drug use and contraband coming into the jail through the mail." [DN 19-2 at 1]. Specifically, "[h]ard to detect drugs . . . and other types of contraband can be sent to inmates in the mail." [*Id.*]. The Policy is also neutral—the HCDC scans "all mail except those from attorneys, the courts, or other public officials." [DN 19-2 at 4]. Any burden on Wicks's access to religious study materials is incidental. Thus, the need to keep contraband from inmates provides a rational connection between the Policy's restriction on physical mail and the HCDC's goal of ensuring safety.

The second factor "is whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Importantly, Wicks does "not allege that he has been deprived of access to mail." *Carlisle v. Long*, No. 5:18-CV-05056, 2019 WL 1338907, at *15 (W.D. Ark. Mar. 25, 2019). Instead, he merely protests that his "ability to send and receive mail [is] Being Interferred [sic] with." [DN 17 at 1]. Despite identifying the perceived lack of privacy, time limit, and single kiosk as burdens, Wicks has still been able to access his mail, including his religious studies—there is no "*de facto* permanent ban." *Overton v. Bazetta*, 539 U.S. 126, 134 (2003). Moreover, Wicks has been in administrative segregation for eight months, [DN 12 at 1]; while it is unclear why he received this classification, the record suggests he would enjoy greater access to the mail kiosks if he were in general population. *See Coleman v. Governor of Mich.*, 413 Fed. App'x 866, 874 (6th Cir. 2011). Wicks's ability to still exercise this right supports the County.

The third factor looks at "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* Wicks offers an alternative to the present kiosk system: providing every inmate "their own cell, kiosk, and privacy with no time restrictions . . . ." [DN 1 at 5]. This proposal would produce the type of "ripple effect" that demands deference to facility officials. *Turner*, 482 U.S. at 90. Giving each inmate a personal kiosk would impose serious financial burdens and logistical challenges upon the HCDC. [DN 19-1 at 8]. And if "the revised policy was removed, . . . it would adversely affect the allocation of prisons resources and allow the previously existing risk of drugs to continue." *Strebe v. Kanode*,

5

No. 7:17-cv-00321, 2018 WL 4473117, at *6 (W.D. Va. Sept. 18, 2018). This factor also supports the County.

Finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90. If "an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91. As addressed above, giving each inmate a kiosk imposes more than a *de minimis* cost. Wicks's other proposal—giving physical mail to inmates—would also interfere with "valid penological interests." Administrators would have to screen each piece of incoming mail for contraband, which would "increase the administrative burden in screening incoming mail to ensure that hidden contraband is not delivered to the recipient in the original mailing." *Strebe*, 2018 WL 4473117, at *7. Another alternative, "duplicating each piece of paper mail coming into the jail," would give inmates physical copies and prevent contraband from entering the facility. [DN 19-1 at 4–5]. Although the County cites "cost" and "clutter" as arguments against this proposal, the Court finds these burdens *de minimis*. [*Id.*]. Based on this "ready alternative," this factor is either neutral or supports Wicks.

Balancing these *Turner* factors, the Policy is "reasonably related to legitimate penological interests." 482 U.S. at 89. Thus, Wicks's constitutional challenges fail.

## B. RLIUPA Claims

Because Wicks's allegations implicate the free exercise of religion, the Court also analyzes his Complaint under relevant statutory protections. The County improperly cites the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, in its analysis of Wicks's religious arguments, [DN 19-1 at 5]; the Supreme Court invalidated that statute as applied against state

6

and local governments in *City of Boerne v. Flores*. 521 U.S. 507 (1997). But, RLIUPA affords similar protections, stating:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) Is in furtherance of a compelling governmental interest; and
> (2) Is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a); *Fox v. Washington,* 949 F.3d 270, 277 (6th Cir. 2020) ("RLIUPA provides greater protections than the First Amendment.").

Under RLIUPA, a plaintiff must show "that the government substantially burdened th[eir] religious exercise." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). An action substantially burdens religion if "that action forced an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite v. Caruso*, 377 Fed. App'x. 508, 511 (6th Cir. 2010) (quoting *Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed. App'x 729, 734 (6th Cir. 2007)). While the Policy's limitations on physical mail may burden Wick's ability to consult religious educational materials, they can hardly be described as "substantial." At most, Wick is "merely inconvenienced" by the restrictions—they do not pressure him to "forfeit" or "violate" his beliefs. *Coleman v. Graham*, 2008 WL 919642, at *6 (E.D. Mich. Apr. 2, 2008). As such, his religious exercise claim cannot prevail under RLIUPA.

## IV. Conclusion

Although the HCDC's Policy deprives Wicks of physical mail, the regulation does not infringe upon his First Amendment right. Likewise, any impact on his access to religious study materials falls short of a First Amendment or RLIUPA violation.

For the reasons set forth above, **IT IS HEREBY ORDERED** that Hopkins County's Motion for Summary Judgment [DN 19] is **GRANTED**. The Court will enter a judgment consistent with this opinion.

Joseph H. McKinley Jr., Senior Judge
United States District Court

November 2, 2021

cc: Jeremy Ray Wicks, *pro se*
    Counsel of Record